Filed 3/22/23  Yu v. Broadway Hollywood Homeowners Assn. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HELEN YU, as Trustee, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BROADWAY HOLLYWOOD HOMEOWNERS ASSOCIATION,<br><br>Defendant and Respondent. | B317443<br><br>(Los Angeles County Super. Ct. Nos. 20STCV24864, BC553215) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Miller Barondess, James Goldman for Plaintiff and Appellant.

The Judge Law Firm, Stephen M. Levine for Defendant and Respondent.

_____

An owner of a condominium in a common interest development sued the homeowner's association for declaratory relief, alleging the association violated its governing documents and applicable statutes by charging fees to third parties for valet parking. After a bench trial, the court found the valet fees violated no governing document or statute and entered judgment for the association. We affirm.

## BACKGROUND

This is the second lawsuit concerning valet parking at the Broadway Hollywood, a 10-story historical building on the corner of Hollywood Boulevard and Vine Street in Hollywood, a noted tourist destination.

The Broadway Hollywood was not designed to accommodate on-site parking in such a way as to comply with modern parking codes. To permit renovation of the building, the City of Los Angeles (city) granted a variance to parking codes in a conditional use permit (CUP) issued on July 14, 2005. One condition for the use permit was that valet service "be made available to residents *and customers* of the facility 24 hours a day, seven days a week." (Italics added.)

The city required that the developer execute and record a master covenant that would constitute the developer's "acknowledgment and agreement to comply with all the terms and conditions established" in the site plan review approving the CUP. The agreement was to "run with the land and be binding on any subsequent owners." The developer recorded the master covenant on August 2, 2005.

The Broadway Hollywood Homeowner's Association (the association) adopted this master covenant as one of its "governing instruments." Also included in the governing instruments were

2

the CUP, a Declaration of Covenants, Conditions, and Restrictions (CC&Rs), and a residential handbook.

Section 9.5.1(a) of the CC&Rs stated, in pertinent part: "From time to time the Board may determine that all excess funds in the Operating Fund be retained by the Association and used to reduce the following year's Regular Assessments."

In 2007, the developer entered into a parking agreement with a valet service to secure offsite valet parking for a monthly fee. However, in 2008, the association ended off-site valet parking for visitors to the building.

By 2013, Helen Yu, the principal of a law firm with an office in the Broadway Hollywood, and trustee of the YL Trust, which owns the office, had become dissatisfied with the association's parking policy. She sued the association on the trust's behalf, seeking a declaration that the association's parking program violated the CUP by depriving association members of the right to make valet parking service available to their customers. After a bench trial, the court concluded that the association's parking program failed to comply with the master covenant or CUP.

We affirmed the resulting judgment, holding that the CUP and master covenant obligated the association to provide valet parking to association members and their customers. (*Yu v. Broadway Hollywood Homeowners Ass'n* (Mar. 7, 2019, B280977, B284599) [nonpub. opn.] (*Yu v. Broadway I*).) We expressed no opinion on whether the association could charge a fee for valet parking.

On June 18, 2019, the association's board met to discuss, as reflected in the agenda for the meeting, "proposed changes to guest parking policy." On June 26, 2019, the association's

3

members were notified that a valet parking program for customers would begin on July 1, 2019.

On June 28 and July 5, 2019, the association's board met in executive session to discuss, as reflected in the agenda, "Implementation planning and review of new pilot valet parking program for compliance [with the Appellate] Court ruling." The board voted to impose $20 for a half day of valet parking, $40 for a full day, and $75 for overnight parking, commencing July 29, 2019.

On July 16, 2019, the association's board met to discuss, as reflected in the agenda for the meeting, how "Customer valet service [was] to be implemented and run according[ to] the language of the CUP," and how businesses wishing to have their customers use valet parking would be required to register with building management. The minutes reflect that the board indicated there would be a cost of $20 for parking for four hours, $40 for eight hours, and an $80 maximum per day.

On July 30, 2019, the association sent a letter to its members advising them that valet service would be provided for customers at the rate of $20 per four hours with a daily maximum of $80.

Yu objected to the new parking policy.

In September 2019, Yu moved the superior court for an order to show cause (OSC) why the association should not be held in contempt for violating the judgment in the first lawsuit. The court issued the OSC but on November 22, 2019 discharged it, finding that any challenge to the association's parking policy would have to proceed by way of a new lawsuit.

On June 5, 2020, the association's board met in executive session to discuss, as reflected in the agenda, "parking rates." It

4

decided to lower valet parking rates to $12 for two hours, $20 for two to four hours, and $30 for more than four hours.

On July 1, 2020, Yu sued the association, seeking declaratory relief concerning the enforceability of the association's decision to impose valet parking fees, an injunction to prohibit such charges, and restitution of fees already collected.

As of the date of trial, every resident at the Broadway Hollywood paid a monthly valet parking assessment of approximately $350 per vehicle.

Yu's theory at trial was that the new valet parking policy:

(1) violated Civil Code section 5600, which prohibits a homeowners association from imposing an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied;

(2) violated the association's governing documents because the board gave insufficient notice that fees would be imposed for parking; and

(3) was improper because no governing document authorized the imposition of fees for providing valet services to customers, as required by the CUP and master covenant.

The court held a virtual bench trial, at which four witnesses testified.

Sean Bieber, the association's general manager, confirmed that the association is a nonprofit organization and testified that the association based its valet parking rates on a survey of properties in the area. Bieber admitted that no board meeting agenda specifically identified the imposition of fees as an item of discussion, but fees were discussed during the meetings themselves. He also admitted that the association incurred no

additional costs as a result of providing valet parking to customers.

Bieber testified that the additional revenue generated by valet parking reduced the otherwise applicable monthly parking assessment to homeowners who used the service.

Christopher Adoian, the president of Proper Parking, the association's valet service contractor, testified that no additional valets, staff, or offsite parking spaces were needed to provide valet service to customers of the association's members.

Eric Bescher, the association's president, testified, and Bieber confirmed, that no additional costs would be incurred for providing valet parking to customers of the Broadway Hollywood's tenants over those associated with providing parking to the tenants themselves. For example, Bescher conceded, Proper Parking did not increase its contractual fee as a result of the decision to provide customer parking.

Yu testified that association assessments were sufficient to cover all parking costs, including all costs relating to valet service.

No evidence at trial indicated that member assessments were insufficient to cover all parking-related costs.

No evidence indicated that any board meeting agenda mentioned fees imposed for valet parking, except (arguably) the agenda for the June 5, 2020, meeting, which mentioned "parking rates."

On August 12, 2021, the trial court issued a proposed statement of decision. It concluded that Civil Code section 5600, which limits assessments and fees an association may impose, applied only to fees imposed on association members, not those imposed on third parties such as the members' customers. The

6

court found that setting the amount of valet parking fees was a matter of discretion, and no evidence established that the fees imposed by the association were arbitrary or unreasonable.

Yu objected to the proposed statement of decision on several grounds, but the court overruled all objections, adopted the proposed statement as final, entered judgment in favor of the association, and awarded it $77,300.29 in attorney fees.

## DISCUSSION

Yu contends that the association's imposition of fees for valet parking for the members' customers is improper for three reasons.

### A. The Parking Fee Does Not Violate Subdivision (a) of Civil Code Section 5600

A common interest property development exists where a separate property interest is coupled with an interest in a common area or membership in an association.

Common interest developments are governed by the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.; hereafter the CID Act).

Subdivision (a) of Civil Code section 5600 of the CID Act states that a homeowner's association "shall levy . . . assessments sufficient to perform its obligations under the governing documents."[1]

---

[1] Civil Code section 5600 provides:

"(a) Except as provided in Section 5605, the association shall levy regular and special assessments sufficient to perform its obligations under the governing documents and this act.

"(b) An association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."

7

Here, the association preliminarily argues, and the trial court found, that section 5600 applies only to assessments levied on association members, not fees imposed on third parties.

Under the circumstances of this case, we disagree. Subdivision (a) of section 5600 states that an association must levy assessments sufficient to perform its obligations under the governing documents. In *Yu v. Broadway I*, we held that the governing documents obligated the association to provide valet parking to association members and their customers. Because the statute concerns an association's obligations, and one of the obligations here relates to members' customers, the statute applies to that obligation.

Therefore, subdivision (a) of section 5600 imposes a duty on the association to levy assessments sufficient to provide valet parking to members' customers.

Yu contends that valet parking fees charged to customers of the association's members violate subdivision (a) of section 5600 because, Yu argues, valet parking must be financed exclusively by member assessments, not third party fees. We disagree.

In construing section 5600, " ' "as with any statute, we strive to ascertain and effectuate the Legislature's intent." ' [Citations.] 'Because statutory language "generally provide[s] the most reliable indicator" of that intent [citations], we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context [citation].' [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*People v. Robles* (2000) 23 Cal.4th 1106, 1111.)

---

Undesignated statutory references will be to the Civil Code.

Here, the language of section 5600 contains no ambiguity. It states only that an association must levy assessments sufficient to perform its obligations. It does not state that association obligations must be financed exclusively through assessments.

This conclusion is bolstered by subdivision (b) of section 5600, which governs the imposition of an "assessment or fee," thereby implying than an association is permitted to impose fees in addition to assessments to perform its obligations.

B.     **The Parking Fee Does Not Violate Subdivision (b) of Civil Code Section 5600**

Yu's real contention concerns the application of subdivision (b) of section 5600. She argues that undisputed evidence admitted at trial showed that the imposition of valet parking fees in this case violated subdivision (b) because they exceeded the cost of providing valet parking. We disagree.

Subdivision (b) of section 5600 provides than an association "shall not impose . . . an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."

Here, the evidence at trial established that association members were assessed $350 per month for parking.

The evidence also established that customers were charged a fee for valet parking.

Finally, the evidence established that valet parking for customers resulted in no additional cost.

No direct evidence established that the $350 monthly assessment plus parking fees exceeded the amount necessary to defray parking costs.

Yu relies on an inference to support her conclusion that in this case, assessments plus fees exceeded costs. First, she relies

9

on her own testimony to the effect that the monthly $350 parking assessment covered the cost of valet parking. From this fact and the fact that fees were collected, Yu infers the assessment plus fees exceeded the cost of valet parking.

But even if we accept this inference, it does not follow that the parking fee policy violated subdivision (b) of section 5600 by exceeding the amount necessary to fund parking because the assessment, to which the fee was added, *could change*. No evidence suggested it could not change, and Bieber testified that the additional revenue generated by valet parking reduced the otherwise applicable monthly parking assessment.

Therefore, it was possible, given the evidence, that the calculus of parking assessment plus parking fees could change by reducing the assessment. Yu therefore failed to establish that the assessment plus fees exceeded parking costs.

Even if no actual reduction in the monthly parking assessment has yet occurred, nothing prevents the association from retroactively reducing the assessment to account for increased parking revenues resulting from fees charged to third parties. On the contrary, the governing documents provided that excess funds could be retained by the association and used to reduce the following year's assessments.

Yu argues that the fee schedule imposed by the association was based on no reasonable estimate about the expense of valet parking. The point is irrelevant. It was Yu's burden in the first instance to show that the monthly parking assessment plus parking fees exceeded the amount necessary to defray parking costs. As discussed above, she failed to do so. The burden thus never shifted to the association to justify its fee schedule as reasonable and nonarbitrary.

## C.    Notice

Yu contends the board's decision to impose valet parking fees violated "applicable notice requirements."  We disagree.

Section 4920 obligates a homeowners' association to "give notice of the time and place of a board meeting at least four days before the meeting" and to provide an "agenda for the meeting."

Here, evidence at trial established that the board gave at least four days notice before its meetings and provided agendas.

Yu argues the June 2019 decision to impose fees for valet service was improper because the agenda for the meeting at which those fees were discussed did not specifically mention parking fees.  We disagree.  The agenda stated that "proposed changes to guest parking policy" would be discussed at the meeting.  Section 4920 requires no further specificity.

Yu argues for the first time in her reply that the association violated the notice provision of section 4360.  Because this argument appears only in the reply, we deem it forfeited.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.                    WEINGART, J.

11